Booth, Chief Justice,
delivered the opinion of the court:
Plaintiff is a New Jersey corporation engaged in the tobacco business. In 1915 plaintiff manufactured and exported cigarettes. The cigarettes exported were manufactured in part from tobacco imported by plaintiff from abroad, and upon which plaintiff had paid the tariff duties then applicable. Plaintiff, in virtue of paragraph O of the tariff act of 1913, filed with the collector of customs at the port of New York during the years 1916, 1917, and 1918 refund or drawback claims for the full amount, less 1 per centum of the duties paid on that portion of the tobacco formerly imported by it, and contained in the exported cigarettes. The above paragraph reads in part as follows (38 Stat. 114, 200) :
“ That upon the exportation of articles manufactured or produced in the United States by the use of imported merchandise or materials upon which customs duties have been paid, the full amount of such duties paid upon the quantity of materials used in the manufacture or production of the exported product shall be refunded as drawback, less 1 per centum of such duties: * * * That the imported materials used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all_ cases where drawback of duties paid on such materials is claimed, be identified, the quantity of such materials used and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, to the agent of *206 either or to the person to whom such manufacturer, producer, exporter, or agent shall in writing order such drawback paid, under such regulations as the Secretary of the Treasury shall prescribe.”
In 1915 an investigation disclosed that plaintiff and its branches had indulged the practice of exporting unsalable and deteriorated cigarettes to be destroyed in order to collect drawbacks, whereupon an opinion was sought from the Attorney General as to whether a refund of duties as claimed could be allowed, and on October 24, 1916 (31 Op. Atty. Gen. 1), the Attorney General advised the Secretary of the Treasury that a transaction of the character charged precluded the allowance of drawback claims.
Acting in pursuance of this letter and under the terms of the act of March 8, 1875, the Secretary on March 30, 1917, authorized the collector “ to suspend all payments of drawback to the American Tobacco Company or any of its branches until further advised.” The payment of the claims involved was suspended by the collector.
July 27, 1920, the Government, proceeding under the act of March 3, 1875, instituted suit in the United States District Court of New Jersey to recover from the plaintiff the sum of all drawbacks mistakenly paid and accrued for the exportation of the cigarettes for destruction. Subsequently on January 6, 1925, the above suit was dismissed by the Government for lack of proof to sustain it, whereupon on January 23,1925, the collector was advised by the Secretary of the Treasury to take action “ looking to the payment of drawback withheld from these firms under the act of March 3, 1875.”
All of the claims sued upon with the exception of two were finally liquidated on January 27, 1925, and duly paid the next day, January 28, 1925. One claim for $17.32 was not finally liquidated until March 13, 1925, and paid the same day; another was finally liquidated February 11, 1925, and likewise paid the same day.
January 21,1927, the plaintiff demanded of the Secretary of the Treasury the payment under the act of March 3,1875, of interest upon said claims. The Secretary referred the matter to the General Accounting Office, and the final de- *207 cisión of the General Accounting Office denying the claim was rendered November 2, 1927.
This suit is for the recovery of the sum of $3,839.03, interest upon the total amount of $10,270.05 paid to plaintiff in the manner above stated. It is predicated upon the act of March 3, 1875, and a contention that interest should be computed and allowed upon said claims from the date of filing the same, except as to entries filed previous to the suspension letter of the Secretary of March 30, 1917. As to these entries the plaintiff claims interest from date of that letter to date of payment.
The act of March 3, 1875, 18 Stat. 481, is in the following language:
“ That when any final judgment recovered against the United States or other claim duly allowed by legal authority, shall be presented to the Secretary of the Treasury for payment, and the plaintiff or claimant therein shall be indebted to the United States in any manner, whether as principal or surety, it shall be the duty of the Secretary to withhold payment of an amount of such judgment or claim equal to the debt thus due to the United States; and if such plaintiff or claimant assents to such set-off, and discharges his judgment or an amount thereof equal to said debt or claim, the Secretary shall execute a discharge of the debt due from the plaintiff to the United States. But if such plaintiff, or claimant, denies his indebtedness to the United States, or refuses to consent to the set-off, then the Secretary shall withhold payment of such further amount of such judgment, or claim, as in his opinion will be sufficient to cover all legal charges and costs in prosecuting the debt of the United States to final judgment. And if such debt is not already in suit, it shall be the duty of the Secretary to cause legal proceedings to be immediately commenced to enforce the same, and to cause the same to be prosecuted to final judgment with all reasonable dispatch. And if in such action judgment shall be rendered against the United States, or the amount recovered for debt and costs shall be less than the amount so withheld as before provided, the balance shall then be paid over to such plaintiff by such Secretary, with six percent interest thereon, for the time it has been withheld from the plaintiff.”
The foregoing statute has been so many times before the courts that we think added observations as to its scope and intent would not in any way assist in the solution of the *208 issue in this case. In the case of the Helvetia Milk Condensing Co. v. United States, 74 C.Cls. 142, this court assembled and cited many of the cases involving claims preferred under the act, and, further, it is conceded by the parties hereto that before interest may be allowed the claim itself must have been “ duly allowed by legal authority.”
The plaintiff’s brief is addressed to an argument that the order of March 30, 1917, suspending payment presupposes a prior allowance, and that therefore interest is certainly due from the date of the order. Two obstacles, to say the least, forestall the contention: First, all but four of the claims were filed subsequent to the suspension order and many were not filed until more than a year later; next, the statute we think precludes inferences that suspension of payment necessarily includes prior allowances. The statute protects the possessor of a claim allowed by legal authority. A liquidated claim, which if in the end is proven to be free from deduction or extinction by the interposition of set-off or counterclaims, entitles the owner to interest thereon as reimbursement for the loss of the principal of his claim during the period exacted in the determination of the claimant’s liability to the Government. In Stewart & Co. v. United States, 71 C.Cls. 126, a case involving a question of interest under the act of March 3, 1875, on page 131 this court said:
“ The act of March 3, 1875, above referred to, provided in substance that when any final judgment or approved claim against the United States is presented for payment and payment is withheld because of an asserted counterclaim or set-off, suit shall be instituted, and if the set-off asserted is not sustained, then interest shall be allowed on the judgment or claim, payment of which was thus wrongfully withheld or deferred. This provision has been held applicable in similar cases in other courts. See United States, v. La Grange Grocery Co., 31 Fed. (2d) 297, and United States v. New York, C. & St. L. R. Co., 32 Fed. (2d) 887, in the reasoning of which we concur.”
Article 879 of the Customs Regulations of 1915 provides as follows:
“No drawback on materials used in the manufacture of exported articles shall be allowed until the import entries covering such materials shall have been liquidated and such *209 liquidation shall have been made final by operation of law or by acceptance by the importer.
“ The drawback claim having been completed by the filing of the entry, bills of lading, etc., required by these regulations, and the landing certificate having been produced where necessary or bond given therefor, and the exporting vessel or conveyance having been cleared as shown by record of clearance in the case of direct exportation or the certificate of exportation received where the merchandise was exported at another port, the collector shall ascertain the drawback due by reference to the records of importation and the drawback rate under which the drawback claimed is allowable. Import entries, certificates of importation, and extracts from such certificates shall constitute the records from which the amount of duty paid on the quantity of materials used shall be determined; and to guard against errors of identification and of overallowance all materials identified in manufacturers’ certificates and in export entries which have been liquidated and all materials covered by certificates of importation and extracts from such certificates issued shall be charged against the records of importations to which they respectively refer.
“When, in establishing a drawback rate, the department gives percentages to be taken upon which to base the quantity of imported material used and also the amount of wastage, these percentages are to be considered as maximum percentages and not as absolute fixed figures to be used in ascertaining the drawback due.”
The regulation, as well as the nature of a drawback refund claim, requires time for investigation and allowance. It seems inconceivable that interest could lawfully be allowed, computed from the date of their filing to date of payment. The procedure disclosed in finding VIII negatives conclusively that in the face of this record the court would be warranted in accepting the date of filing the claim as the date from which to compute interest thereon. It is true that in this particular case the Government delayed the allowance of the plaintiff’s claims an exceedingly prolonged period of time; but it is apparent from the record that the court has no alternative and is bound to accept the dates stated in column 5, finding VIII, as the dates when the claims were allowed by lawful authority. The dates therein stated reflect the fact, and it is the only evidence in the record as to the fact that the claims involved were not finally liqui *210 dated until a few days subsequent to the dismissal of the suits instituted by the Government to obtain a judgment against the plaintiff for mistaken payments theretofore made which would be credited against the amount of the claims filed.
The court cannot dispense with proof of the date of lawful allowance of the claims, and manifestly we have no other proof than that set forth in finding VIII. The plaintiff vigorously challenges such a holding and asserts with positiveness that if it is the law, in the face of a remedial statute the Government may unduly and unreasonably delay the allowance of claims and preclude as in this case the allowance of interest thereon. This case, we think, is to be determined upon the facts of record, and the argument advanced is one which the court may not consider in its consideration of the issue involved.
The payment of all the claims on the day following their final liquidation precludes a judgment for interest thereon, and the petition will be dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Geeen, Judge, concur.